## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

DR. EFRAIN GONZALEZ-DROZ, et al.　　*
　　　　　　　　　　　　　　　　　　*
　　　　Plaintiffs　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　　　　*　　　**Civil No. 06-2263 (SEC)**
　　　　　　　　　　　　　　　　　　*
DR. LUIS R. GONZALEZ-COLON, et al.　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　Defendants　　　　　　　　　*
*****************************************

## OPINION AND ORDER

Before the Court is Plaintiffs', Dr. Efrain González-Droz (hereinafter "González-Droz"), Yessenia Candelaria, and the Conjugal Partnership González-Candelaria, Emergency Motion for Issuance of Preliminary Injunctive Relief (Docket # 11), and Defendants' Motion in opposition thereto (Docket # 18).  After carefully considering the parties' filings, the evidence in the record, and the applicable law, for the reasons set forth below, Plaintiffs' Motion is **DENIED**.

### Factual and Procedural Background

On May 11, 2007, Plaintiffs filed the instant motion (Docket # 11).  Plaintiffs' motion sought a preliminary injunction to order the Board of Medical Examiners of Puerto Rico (hereinafter "the Board"), and its members to reinstate González-Droz's medical license, and to enjoin the Board from holding further administrative procedures related to González-Droz's suspension from the practice of medicine in Puerto Rico.  Ultimately, the Motion sought to leave Resolution-2007-10 (Docket # 11, Ex. 2) without effect.  Therein, the Board found that since González-Droz is not certified as a plastic surgeon, his practice of that branch of medicine and his advertisements related to it were in breach of state law and the Professional Code of Ethics, and constituted an illegal practice of medicine. Id.  As a result, the Board summarily suspended González-Droz's medical license and scheduled a formal administrative hearing. Id.

On May 21st, 2007 Defendants filed their response in opposition to Plaintiffs' Motion.

**Civil No. 06-2263 (SEC)**                                                                                    2

Docket # 18.  Movants filed a reply to Defendants' response on June 22, 2007.  The hearing

was held on July 18, 2007.  Per the Court's instructions, following said hearing, the parties

submitted  their respective memoranda of law. See, Docket ## 49 and 50.

Dr. Efrain González-Droz is Board Certified in Obstetrics and Gynecology. Transcript

of Preliminary Injunction Hearing at 143.  He is also a fellow of the American Academy of

General Surgery, the American Academy of Cosmetic Surgery, and of the American

Academy of Obstetrics and Gynecology, and, in addition, is a member of the American

Society of Cosmetic Breast Surgery, and the American Society of Liposuction Surgery. Id.

at 143-144.  He graduated from the medical school of the Universidad Central del Caribe in

1991 and, after a four year residency in obstetrics and gynecology, was licensed to practice

medicine in 1995.  González-Droz then began his career in obstetrics and gynecology, but

gradually, trained through courses in continued medical education,  began to add cosmetic

medicine procedures to his practice. Id. at 144-146, 158-159, 190-191.  Cosmetic medicine

eventually became the central element of his practice. Id. at 143.

In 2005, Dr. Carlos Avellanet-Quiñones (hereinafter "Avellanet-Quiñones") appealed

in the Circuit Court of Appeals of Puerto Rico a decision by the Board where González-Droz

served as a witness. Tribunal Examinador De Medicos de Puerto Rico v. Avellanet Quinones,

2005 WL 2864811 (TCA 2005).  Avellanet-Quiñones, also an obstetrician-gynecologist,

practiced cosmetic medicine.  The Board's decision, in that case, was based on a complaint

filed on October 29, 2004, by the Puerto Rican Society of Plastic Surgeons, Inc. and the

Puerto Rico Medical Association Plastic Surgery Division against Avellanet-Quiñones.  In

it the Board imposed a fine on Avellanet-Quiñones and suspended his medical license.

González-Droz testified that he approached the Board to request information and guidance

about the requirements to perform cosmetic surgeries, that the Board's legal department

informed him that there were no special requirements for cosmetic surgery, that he was asked

to report to the Board any continuing education and other courses in cosmetic surgery he had

taken, and that he had furnished such reports to the Board which approved them without any questions. Id. at 6.  In its decision, the Circuit Court of Appeals of Puerto Rico overturned the Board's decision because while the Board has the power to limit the scope of who can practice cosmetic surgery procedures it had not done so at the times relevant to the Avellanet-Quiñones resolution. Id. at 15-17.  Thus the Circuit Court of Appeals of Puerto Rico held that the Board could not "prohibit what it has not regulated." Id. at 17.

Ten days prior to the judgment by the Circuit Court of Appeals of Puerto Rico the Board took the opportunity to regulate in order to prohibit.  In a public notice published in a local newspaper, the Board elaborated their public policy regarding aesthetic medicine[1]. See, Docket # 51, Ex. # 2.  The Board declared aesthetic medicine to be simply a group of techniques and procedures that are better catalogued under either plastic surgery or dermatology. Id. at 2.  Therefore, anyone not specialized in either of these areas that performs, advertises, or intends to perform these techniques is deemed, by the Board, to be practicing medicine illegally. Id.  The public notice, taken together with the judgment by the Circuit Court of Appeals of Puerto Rico, appears to proscribe the practice of cosmetic medicine to anyone in Puerto Rico who is not certified as a plastic surgeon and/or a dermatologist.

In the meantime González-Droz continued to practice cosmetic medicine in Puerto Rico.  On September 25, 2006, González-Droz was informed by the Board that an investigation as to the cause of Eileen Burdette-Droz's death and its possible connection to a cosmetic medicine procedure he performed was underway.  On December 4, 2006, Juarkiria Colón filed a grievance against González-Droz for complications with cosmetic medicine procedures he performed; on  December 8, 2006, and Maria Martinez-Marrero did the same.  On December 12, 2006, as a result of these three incidents and the public policy published by the board on October 19, 2005, the Board unanimously decided to suspend

---

[1]We take the term "aesthetic medicine"to be fungible with the term "cosmetic medicine."

Civil No. 06-2263 (SEC)                                                                          4

González-Droz's medical licence.  However, González-Droz was not informed of this determination until April 17, 2007 through the Board's Resolution-2007-10.  Docket # 11, Ex. 2.  González-Droz had filed this action on December 18, 2006.

### Applicable Law and Analysis

There are four factors a court must weigh when deciding whether to grant a preliminary injunction: (1) will there be irreparable harm if the injunction is not granted; (2) is the movant likely to succeed on the merits; (3) the balance of harm between the movant if the preliminary injunction is not granted and the objectors if the preliminary injunction is granted; and (4) how granting the preliminary injunction will affect the public interest.  See, e.g., Auburn News Co., Inc. v. Providence Journal Co., 659 F.2d 273, 276-277 (1st Cir. 1981); Chilcott v. Orr, 747 F.2d 29, 32-33 (1st Cir. 1984); Lancor v. Lebanon Housing Authority, 760 F.2d 361, 362 (1st Cir. 1985); Hypertherm, Inc. v. Precision Products, Inc., 832 F2d 697, 699 (1st Cir. 1987); Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 930 (1st Cir. 1988); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993); Gately v. Com. of Mass., 2 F.3d 1221, 1224-1225 (1st Cir. 1993); Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996); New Comm Wireless Services, Inc. v. SprintCom, Inc., 287 F.3d 1, 8-9 (1st Cir. 2002); Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 16 (1st Cir. 2002).

Of these four factors, two have been singled out by the First Circuit as determinative: (1)will there will be irreparable harm if the injunction is not granted, and (2)whether he or she is likely to succeed on the merits.  If the movant cannot substantiate either of these two factors, the analysis of the remaining factors can stop, and the preliminary injunction may be denied.

In Sampson v. Murray, 415 U.S. 61 (1974) the Supreme Court held that the Court of

Civil No. 06-2263 (SEC)                                                                 5

Appeals for the District of Columbia Circuit erred when it concluded that finding irreparable injury was not a necessary ingredient of the injunction soup. Id. at 88.  The Supreme Court pointed to previous opinion where it had stressed that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Id., citing, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-507 (1959).  In Public Service Co. Of New Hampshire v. Town of Westbury, 835 F.2d 380 (1st Cir. 1987), the First Circuit took this stress on irreparable harm to mean that if the movant fails to show actual irreparable harm, as opposed to speculative injury, the preliminary injunction will not be granted and it will be unnecessary to "reach the question of likelihood of success." Id. at 383.  Therefore, the First Circuit has consistently held that "irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) (citing, Matos ex rel. Matos v. Clinton School Dist., 367 F.3d 68, 73 (1st Cir. 2004)).

On multiple occasions the First Circuit has given great weight to the movant's likelihood to succeed on the merits when determining whether an injunction should be granted.  This criterion has "loomed large" when examining cases asking for preliminary injunctions.  Auburn News Co., Inc. v. Providence Journal Co., 659 F.2d 273, 277 (1st Cir. 1981).  In fact, the Circuit has gone so far as to call likelihood of success "critical" to the decision, e.g., Lancor v. Lebanon Housing Authority, 760 F.2d 361, 362 (1st Cir. 1985); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991);  "the main bearing wall of the four-factor framework," Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996), and the sine qua non of the four factor formulation, e.g., Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993); Gately v. Com. of Mass., 2 F.3d 1221, 1224-1225 (1st Cir. 1993); Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 16 (1st Cir. 2002).

Plaintiff presents in his Motion a list of five factors to consider when faced with a motion for the issuance of a preliminary injunction. See, Docket # 11 pp. 9.  Of the five, four

are the same as the ones already stated above and the fifth one is the availability of a remedy at law.  Thus, it is odd that while plaintiff-movant clearly knows of the irreparable harm factor he does not offer any explicit argument to show that irreparable harm will result if the preliminary injunction is not granted.  The First Circuit has held that irreparable harm is not to be assumed by the courts, instead it is the movant's burden to demonstrate it.  See, Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991); Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,102 F.3d 12, 18 (1st Cir. 1996); Matos ex rel. Matos v. Clinton School Dist., 367 F.3d 68, 73 (1st Cir. 2004); Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).  Plaintiffs, by not including any argument on how a denial of the preliminary injunction will cause them any *irreparable* harm, have left it up to the Court to figure out if there is such a harm; in effect contravening the standard introduced in the precedent cited above.  Consequently, Plaintiffs have failed to establish a necessary element for the grant of a preliminary injunction and, as a result, their efforts in obtaining said preliminary injunction must fail.

However, if arguendo, plaintiffs were to expressly attempt to demonstrate irreparable harm, the Court would still find that Plaintiffs fail to establish this indispensable element. Most of the harms faced by Plaintiffs are the result of the Board of Medical Examiner's administrative decision of April 17, 2007 (Docket # 11 Ex. # 2) where Dr. González-Droz' license to practice medicine in Puerto Rico was summarily suspended.  González-Droz's harms seem to be limited to the suspension of his medical license, and to whatever monetary damages he suffers based on his inability to practice medicine in Puerto Rico.  If González-Droz were to prevail on the merits, it will become clear that these harms are easily repaired. The Board would be ordered to reinstate his license, thus repairing that harm.  Monetary damages would be imposed on Defendants to make Plaintiffs whole.  This would place them where they would have been were it not for the Board prohibiting González-Droz from practicing medicine in Puerto Rico.  If we consider that Plaintiff has been living in California since December 16th, 2006, where he is a licensed physician and practices cosmetic medicine,

**Civil No. 06-2263 (SEC)**                                                                 7

it is difficult to discern what kind of monetary damages would result from his not being able to practice medicine in Puerto Rico after April 17th, 2007.

Besides failing to establish irreparable harm, Plaintiffs are also unlikely to succeed on the merits.  Within the United States, determining who receives a license to practice medicine, much like a license to practice law, is part of the police power of the states.  In Puerto Rico, the authority related to the issuance and regulation of medical licenses was entrusted to the Board of Medical Examiners through P.R. Laws Ann. tit. 20 § 34 (2003). If we then look at the holding of the Circuit Court of Appeals of Puerto Rico from Avellanet-Quiñones' appeal in conjunction with the public notice the Board published, we can clearly see that the Board has the power to regulate who can practice cosmetic medicine, and that it did so.  By continuing to practice cosmetic medicine in Puerto Rico after the public notice, González-Droz acted against the Board's public policy, and thus opened himself up to possible sanctions from the Board.  Given these facts it seems unlikely that the Plaintiffs will succeed on the merits in the present action.  It should be noted, however, that:

> ...a court's conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes.  Thus, a party losing the battle on likelihood of success may nonetheless win the war at a succeeding trial on the merits.

Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991).

**Conclusion**

Since, Plaintiffs face no irreparable harm if their request for a preliminary injunction is denied, and are unlikely to succeed on the merits, the Court, in adopting the applicable standard, hereby  **DENIES** Plaintiffs' motion.

**SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of February, 2008

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge