## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

DR. EFRAÍN GONZÁLEZ-DROZ, et al.

Plaintiffs

v.

Civil No.  06-2263 (SEC)

DR. LUIS R. GONZÁLEZ-COLÓN, et al.

Defendants

## OPINION AND ORDER

Pending before the Court are Plaintiffs Dr. Efrain González-Droz ("González-Droz"), Yessenia Candelaria, and the Conjugal Partnership González-Candelaria's motion for summary judgment (Dockets ## 124 & 138), Defendants Dr. Luis R. González-Colon et al's ("Defendants") opposition thereto (Docket # 147), and Plaintiffs' reply (Docket # 151). Defendants also moved for summary judgment (Dockets ## 126 & 129), and Plaintiffs filed their opposition (Docket # 146).  After carefully considering the filings, the evidence on the record, and the applicable law, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendants motion is **GRANTED in part and DENIED in part.**

### Procedural Background

On December 18, 2006, Plaintiffs filed suit seeking declaratory and injunctive relief against Defendants under 42 U.S.C. § 1983 and 28 U.S.C. § 1331,[1] setting forth due process and equal protection violations under the Fifth and Fourteenth Amendments to the U.S. Constitution. U.S. Const. amend. V & XIV. They also allege unlawful restraint of trade, pursuant to the Sherman Act, 28 U.S.C. § 1 & 3. See Dockets ## 2, 36 & 104.  According to Plaintiffs, the Public Notice ("Public Notice") of the Board of Medical Examiners of

---

[1] Plaintiffs also allege diversity jurisdiction.

Civil No. 06-2263 (SEC)                                                                           2

Puerto Rico's ("Board")[2] dated October 19, 2005, regarding mesotherapy, aesthetic medicine, complementary and alternative medicine is unconstitutional insofar as it bars all physicians, except dermatologists and plastic surgeons, from practicing cosmetic medicine in Puerto Rico. Accordingly, they move to set aside the Public Notice and for injunctive relief allowing González-Droz to resume his cosmetic medical practice in Puerto Rico.

　　　　Prior to filing the present suit, Plaintiffs moved to California. See Plaintiffs' Statement of Uncontested Facts ("Plaintiffs' SUF")  ¶ 5 at Docket # 138. Shortly thereafter, on December 12, 2006, the Board members held a meeting after which González-Droz's medical license was summarily suspended. Defendants' Statement of Uncontested Facts ("Defendants' SUF") ¶¶ 7-9 at Docket # 129; Plaintiffs' SUF  ¶ 10. On April 17, 2007, the Board issued Resolution 2007-10 (Docket # 11, Ex. 2), in the administrative proceeding captioned "Medical Examining Board v. Dr. Efraín González, Medical License no.12,077. MATTER: Summary suspension; medical malpractice and unlawful illegal practice of medicine. Case No. TEM-Q-2006-24," and summarily suspended González-Droz's Puerto Rico medical license. Plaintiffs' SUF ¶ 9. According to Resolution 2007-10, González-Droz practiced the specialty of plastic surgery without being certified as a plastic surgeon by the Board. Defendants' SUF ¶ 11. Therein, the Board found that since González-Droz is not certified as a plastic surgeon, his practice of that branch of medicine and his advertisements related to it were in breach of state law and the Professional Code of Ethics, and constituted an illegal practice of medicine. Docket # 11, Ex. 2. González-Droz was admonished, and ordered to refrain from the practice of medicine until an administrative hearing was held. Defendants' SUF at ¶ 12. Through said Resolution, the Board summarily suspended González-Droz's medical license and scheduled a formal administrative hearing. Id.

---

　　　　[2] On August 1, 2008, the Board's Act was repealed, and a successor entity, the Medical Licensing and Discipline Board was created pursuant to Law 139, P.R. Laws ann. tit. 20, § 131 et. seq.

In the section of the Resolution titled "holding of hearing," the Board stated that the suspension would become effective the date that González-Droz received the Resolution; that a hearing would be held 15 days after such notification; and that if he did not appear at that hearing, the Board could issue an entry of default and hold the hearing in his absence. Plaintiffs' SUF ¶ 12; Docket # 11, Ex. 2. On May 1 or 2, 2007,[3] González-Droz and his counsel were personally served in Puerto Rico with Resolution 2007-10. See González-Droz's sworn statement, Docket #, 11-2, p. 7; Plaintiffs' SUF ¶ 9.[4]  On May 10, 2010, the summons for the hearing to be held on May 15, 2007, was sent via mail to González-Droz's residence in California, and via fax to his attorney Rolando Emmanuelli-Jiménez. Plaintiffs' SUF ¶ 13; Defendants' SUF ¶ 14; Docket # 11-2, pp. 7-8.

On May 11, 2007, Plaintiffs filed an Emergency Motion for injunctive relief in the present case, to order the Board and its members to reinstate González-Droz's medical license, and to enjoin the Board from holding further administrative procedures related to González-Droz's suspension from the practice of medicine in Puerto Rico. See Docket # 11. Ultimately, said Motion sought to leave Resolution 2007-10 without effect. In the interim, the hearing before the Board was held on May 15, 2007, and Plaintiffs and their counsel did not attend. Plaintiffs' SUF ¶ 15. Based upon the evidence presented at the May 15, 2007 hearing, the Board issued an Order, dated April 4, 2008, and sent by certified mail to González-Droz on April 22, 2008, decreeing a five-year suspension of his medical license and imposing a fine of five thousand dollars ($5,000.00). Plaintiffs' SUF ¶ 16; See Docket # 69 pp. 2-3. Plaintiffs moved this Court to set aside the five-year suspension and fine, but

---

[3] In his sworn statement (Docket #, 11-2, p. 7), González-Droz states that he was personally notified about the Resolution on May 1, 2010. However, Plaintiffs' SUF ¶ 9 provides that he learned about the Resolution on May 2, 2010.

[4] There appears to be a typographical error at Docket # 11 as to the year of the notification (2006). Clearly, the notification was done in 2007, since the summary suspension was issued in April 2007.

said request was denied. See Dockets ## 69, 72 & 76.

After a preliminary injunction hearing held before this Court on July 18, 2007 (see Docket # 44), Plaintiffs' motion for injunctive relief was denied. See Docket # 58. Plaintiffs then filed a Notice of Interlocutory Appeal on March 6, 2008. See Docket # 64.  On July 23, 2009, the First Circuit affirmed this Court's denial of Plaintiffs' request for injunctive relief at Docket # 11. See Docket # 85. Accordingly, the case's proceedings continued before this Court. On March 1, 2010, the parties filed their respective motions for summary judgment, and oppositions thereto.

In their motion for summary judgment, Defendants contend that they are entitled to Eleventh Amendment immunity in their official capacities, and quasi-judicial immunity in their personal capacities for the acts they performed as members of the Board. In the alternative, they argue that Plaintiffs failed to state claims under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution. Lastly, Defendants claim that the Sherman Act does not apply to state action and state actors.

Plaintiffs countered with their own motion for summary judgment, arguing that Defendants summarily suspended González-Droz's medical license in violation of his constitutional rights to a due process and equal protection. Specifically, they posit that Defendants failed to hold a pre-deprivation hearing, and properly notify Plaintiffs about the hearing held on May 15, 2007. Moreover, according to Plaintiffs, the Board's "Public Notice" dated October 19, 2005 ("Public Notice") regarding mesotherapy, aesthetic medicine, complementary and alternative medicine improperly bars all physicians, except dermatologists and plastic surgeons, from practicing cosmetic medicine in Puerto Rico.

### Applicable Law and Analysis

*R. Fed. Civ. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant

must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .  Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

Because the instant motions are for summary judgment, the parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

Local Rule 56(c). If the opposing party fails to do so, "summary judgment should, if appropriate, be entered." Rule 56(e)(2). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8(1st Cir. 2007). When the parties ignore the Local Rule, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

### Applicable Law and Analysis

It is settled law that each cross-motion for summary judgment must be decided on its own merits. See, *e.g.*, Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996). Notwithstanding, the First Circuit recently held that this does not mean "that each motion must be considered

in a vacuum. Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time." P.R. Am. Ins. Co. v. Rivera-Vazquez,  No. 08-2012/08-2274, 2010 U.S. App. LEXIS 9224 (1st Cir. P.R. May 5, 2010). Accordingly, the parties' motions for summary judgment will be considered simultaneously.

Upon reviewing the filings, this Court notes that Plaintiffs failed to comply with Rule 56(c).  Specifically, they did not submit a separate, short, and concise opposing statement of material facts admitting, denying or qualifying the facts by reference to each numbered paragraph of Defendants' statement of material facts. Accordingly, this Court deems admitted those relevant facts proposed by Defendants that are properly supported by the record.

The uncontested relevant facts are as follows. González Droz is board certified in obstetrics and gynecology, and was a licensed physician in Puerto Rico from December 29, 1995 until April 17, 2007. Plaintiffs' SUF ¶ 1 & 2. He completed his medical residence in obstetrics and gynecology, and began his medical practice in 1996. Plaintiffs' SUF ¶ 1. To this date, he has performed at least one thousand surgical procedures in the field of obstetrics/gynecology, including caesarian sections, post partum sterilizations, dilatations, hysterectomies, and sterilizations, among others. Id. at ¶ 2. González-Droz is also a member of the American College of Surgeons, the American Academy of Cosmetic Surgery, the American Society of Cosmetic Breast Surgery and the American Society of Lipo-Suction Surgery. Id.

In 1997, González-Droz began performing liposuction procedures after taking continuing medical education courses in that area.  Plaintiffs' SUF ¶ 3. Thereafter,  he took courses in other procedures belonging to the area of cosmetic medicine, including breast lifts, breast augmentations, breast reductions and abdominoplasties, and gradually added other cosmetic procedures to his medical practice. Id. To date, he has performed at least three

thousand cosmetic medicine procedures, including liposuctions, breast lifts, breast augmentations, breast reductions and abdominoplasties. Id. at ¶ 4. By 2006, González-Droz was performing more cosmetic medicine procedures than obstetrics/gynecology procedures. Id.

On October 19, 2005, the Board published its Public Notice regarding mesotherapy, aesthetic medicine, complementary and alternative medicine. Id. at ¶ 2. According to the Board, there is no branch of medicine by the name of "aesthetic medicine," and it has never been recognized as a specialty; instead, it is a group of techniques and procedures within the fields of dermatology and plastic surgery that are being performed by physicians who do not have the training required by said specialty, to certify the professional as qualified to safely practice said techniques for the good of the patient. Id. at ¶¶ 3 & 4.

The Board analyzed and studied all aspects of aesthetic medicine, and determined that all persons who advertise, practice, or intend to practice procedures that are inherent to dermatologists and plastic surgeons without the corresponding specialization certification are deemed to be practicing medicine illegally. Id. at ¶ 5 & 6. The Public Notice bars all physicians, except dermatologists and plastic surgeons, from practicing cosmetic medicine in Puerto Rico. Plaintiffs' SUF ¶ 8. Under said notice, plastic surgeons and dermatologists are allowed to perform cosmetic procedures regardless of whether they have had specific training and experience to perform the same. Id.

During a hearing held on December 12, 2006, the Board decided to summarily suspend the medical license of González-Droz, who at that time maintained an internet page in which he publicly advertised the performance of cosmetic surgery. Defendants' SUF ¶¶ 7-9; Plaintiffs' SUF ¶ 10. In mid-December 2006, González-Droz and his family moved to the State of California, and immediately notified Defendants about their change of address.

Plaintiffs' SUF ¶ 5.[5] On April 17, 2007, the Board issued Resolution 2007-10, summarily suspended González-Droz's Puerto Rico medical license, and ordered him to refrain from the practice of medicine until an administrative hearing was held. Plaintiffs' SUF ¶ 9; Defendants' SUF ¶ 12. The Board also stated that the suspension would become effective the date that González-Droz received the Resolution, that a hearing would be held 15 days after such notification, and that if he did not appear at that hearing, the Board could issue an entry of default and hold the hearing in his absence. Plaintiffs' SUF ¶ 12.

On May 1 or 2, 2007,[6] González-Droz and his counsel were personally notified served in Puerto Rico with Resolution 2007-10. See González-Droz's sworn statement, Docket #, 11-2, p. 7; Plaintiffs' SUF ¶ 9.[7]  On May 10, 2010, the summons for the hearing to be held on May 15, 2007, was sent via mail to González-Droz's residence in California, and via fax to his attorney Rolando Emmanuelli-Jiménez. Plaintiffs' SUF ¶ 13; Defendants' SUF ¶ 14; Docket # 11-2, pp. 7-8. The hearing was held on May 15, 2007 before Examining Officer Soto. Plaintiffs' SUF ¶ 15. Plaintiffs and their counsel did not attend. Id.

*Yessenia Candelaria and the conjugal partnership*

This Court first notes that Yessenia Candelaria and the González-Droz-Candelaria conjugal partnership lack standing to assert claims under Section 1983 for alleged violations to González-Droz's constitutional rights. The First Circuit has held "that actions under §

---

[5]  González-Droz currently holds a medical license issued by the pertinent authorities of the State of California, and his California insurance carrier issued a professional liability policy which specifically covers major surgery and cosmetic surgery procedures. Id. His plans were to practice cosmetic medicine only while in California. Id.

[6]  In his sworn statement (Docket #, 11-2, p. 7), González-Droz states that he was personally notified about the Resolution on May 1, 2010. However, Plaintiffs' SUF ¶ 9 provides that he learned about the Resolution on May 2, 2010.

[7]  There appears to be a typographical error at Docket # 11 as to the year of the notification (2006). Clearly, the notification was done in 2007, since the summary suspension was issued in April 2007.

1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights." Ramirez-De Leon v. Mujica-Cotto, 345 F. Supp. 174, 181-182 (D.P.R. 2004) (citing Judge v. City of Lowell, 160 F.3d 67, 76 n. 15 (1st Cir. 1998));  see also Caraballo-Cordero v. Banco Financiero de Puerto Rico, 91 F. Supp.2d 484, 488 (D.P.R. 2000); Rodriguez-Oquendo v. Toledo-Davila, 39 F.Supp 2d 127, 131 (D.P.R. 1999). Thus "a person may not sue or recover for  the deprivation of the civil rights of another." Ramirez-De Leon, 345 F. Supp. 2d at 181-182 (citing Quiles ex rel. Proj. Head Start v. Hernandez-Colon, 682 F. Supp. 127, 129 (D.P.R.1988)). As a result, "family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship." Ramirez-De Leon, 345 F. Supp. 2d at 182 (citing Rodriguez-Oquendo, 39 F. Supp.2d at 131) (citing Torres v. United States, 24 F.Supp 2d 181, 183 (D.P.R. 1998)).

Based on the foregoing, this Court finds that Plaintiffs other than González-Droz lack a viable claim under Section 1983, since they do not claim that their constitutional rights were violated, but only that they have suffered damages for the violation of González-Droz's constitutional rights. Although his wife may have suffered significant mental anguish as a result of his alleged injuries, these damages were not caused by a deprivation of her own constitutional rights. See Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir. 1997).  Therefore, Yessenia Candelaria and the González-Candelaria conjugal partnership's causes of action under Section 1983 are **DISMISSED with prejudice**.

*Eleventh Amendment Immunity*

In their motion for summary judgment, Defendants argue that they are entitled to Eleventh Amendment immunity in their official capacities.  Although González-Droz asserts that he is not claiming damages against Defendants in their official capacity, the complaint and subsequent amendments thereto show otherwise. See Dockets ## 2, 36 & 104. As such, we will address this issue. The Eleventh Amendment to the United States Constitution

provides:

> [t]he Judicial power of the United States shall not be construed to extend to
> any suit in law or equity, commenced or prosecuted against one of the United
> States by Citizens of another State, or by Citizens or Subjects of any Foreign
> State. U.S. Const. Am. XI.

Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State.  See Board of Trustees of the Univ. of Ala. v. Garrett, 121 S. Ct. 955, 962 (2001); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Hans v. Louisiana, 134 U.S. 1, 15 (1890). Even though the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. See Jusino-Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 37 (1st Cir. 2000); Ortiz Feliciano v. Toledo Dávila, 175 F.3d 37, 39 (1st Cir. 1999); Futura Development v. Estado Libre Asociado, 144 F.3d 7,12-13 (1st Cir. 1998); Culebras Enters. Corp. v. Rivera Ríos, 838 F.2d 506, 516 (1st Cir. 1987); Ramírez v. Puerto Rico Fire Servs., 715 F.2d 694, 697 (1st Cir. 1984).

The Supreme Court has established that the Eleventh Amendment protection primarily furthers two goals: the protection of a state's treasury, and the protection of its dignitary interest of not being haled into federal court. Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003) (citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743 (2002)). However, Eleventh Amendment immunity is not absolute and may be waived by the state or "stripped away" by Congress. Metcalf & Eddy v. P.R.A.S.A., 991 F.2d 935, 938 (1st Cir. 1993). There are four circumstances in which the Eleventh Amendment protection unravels: (1) when a state consents to be sued in a federal forum; (2) when a state waives its own immunity by statute or the like; (3) when Congress abrogates state immunity ("so long as it speaks clearly and acts in furtherance of particular powers"); and (4) when, provided that circumstances allow,

other constitutional imperatives take precedence over the Eleventh Amendment's protection. Id. at 938 (citations omitted). Despite the second of the above mentioned circumstances, the First Circuit has held that the fact that a state has waived its immunity to be sued does not automatically mean that it has waived its immunity in federal court. See Díaz-Fonseca v. Commonwealth of Puerto Rico, 451 F. 3d 13, 33 (1st Cir. 2006) (holding that although the Commonwealth waived its immunity to be sued in certain circumstances in its own courts, it did not waive its immunity to be sued in federal court).

The Eleventh Amendment bar extends to governmental instrumentalities, which are an arm or "alter ego" of the State.  See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d. 1034, 1036 (1st Cir. 1987); Ochoa Realty Corp. v. Faría, 618 F. Supp. 434, 435 (D.P.R. 1985); Pennhurst State Sch. Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280-281 (1977); Ursulich v. P.R. Nat'l Guard, 384 F. Supp. 736, 737-38 (D.P.R. 1974). In addition, the Eleventh Amendment also protects state officials in their official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity, for monetary relief, is an action for the recovery of money from the State. Ford Motor v. Dept. of Treasury, 323 U.S. 459 (1945); Will v. Michigan Dept. of State Police, 109 S. Ct. 2304 (1989).  Hence, a claim against a state official in his official capacity for monetary relief is, in essence, a claim against the State.

The Supreme Court requires a two-step analysis in order to determine whether a government institution is an arm or *alter ego* of the state, and thus, entitled to immunity under the Eleventh Amendment. Fresenius Med. Care, 322 F.3d at 65 (citing and discussing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994)). First, the court must analyze how the state has structured the government institution and, second, if the "structural indicators point in different directions," the risk of the damages being paid from the public treasury should be assessed. Id. at 65-69.  The Board is part of the Puerto Rico Department

of Health pursuant to P.R. Laws Ann. tit. 20, § 31, which creates "a Board of Medical Examiners attached to the Department of Health's Office of Regulations and Licensing of Health Professionals, composed of nine (9) physicians." Therefore, the Board is an arm or *alter ego* of the Commonwealth of Puerto Rico. As such, this Court need not dwell on this point.

Albeit it is well settled that the Eleventh Amendment does not preclude claims for prospective equitable relief, it does bar suits for monetary damages against the state, and its officers, in their official capacities. See Ex Parte Young, 209 U.S. 123, 155-56 (1908); Nieves-Márquez v. Commonwealth of Puerto Rico, 353 F.3d 108, 123 (1st Cir. 2003). That is, "it is well settled 'that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action,'" Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 701 (1st Cir. N.H. 1995) (citing Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991)); see also Bettencourt v. Bd. of Registration In Med. Of Mass., 904 F.2d 772, 781 (1st Cir. 1990).

Considering the above, the Commonwealth of Puerto Rico is entitled to Eleventh Amendment immunity. By like token, this Court finds that the Board is an arm of the Commonwealth, and as a result, Defendants in their official capacities are also entitled to Eleventh Amendment immunity. Therefore, González-Droz's claims against Defendants in their official capacities are **DISMISSED with prejudice.**[8]

*Absolute Immunity*

Defendants also argue that they are entitled to absolute immunity in their individual capacities for the acts they performed as members of the Board. According to Defendants,

---

[8] This Court also notes that the Department of Health and the Board are not "persons" under Section 1983, and thus any claims against the Board on this front would also fail. See Velazquez-Feliciano v. Tribunal Supremo, 78 F. Supp. 2d 4, 10 (D.P.R. 1999) (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989)).

they engage in quasi-judicial duties which sufficiently resemble those functions that enjoy absolute immunity. They further contend that co-defendant José Jiménez-Rivera ("Jiménez-Rivera"),[9] as investigative officer of the Board, is also shielded from liability for his prosecutorial functions. See Article 8.9 of the Board's regulations, Docket # 148-4, p. 22.

The Supreme Court has held that "there are some officials whose special functions require a full exemption from liability." Butz v. Economou, 438 U.S. 478, 508 (1978). As Defendants correctly point out, state officials performing prosecutorial functions, "including their decisions to initiate administrative proceedings aimed at legal sanctions," are entitled to absolute immunity. Wang, 55 F.3d at 701 (citing Butz, 438 U.S. at 515). Therefore, Jiménez-Rivera is entitled to absolute immunity for his functions as investigative officer of the Board.

Similarly, those officials who perform quasi-judicial functions that share "enough characteristics [with] the judicial process...should also be immune from suits for damages." Butz, 438 U.S. at 512-513. Specifically, courts have extended absolute immunity to quasi-judicial officials whose activities "involve the exercise of discretion comparable to those of a judge." Velazquez-Feliciano, 78 F. Supp. 2d at 12 (citing Bettencourt, 904 F.2d at 772).

In Diva's Inc. v. City of Bangor, 411 F.3d 30, 40-41 (1st Cir. 2005), the First Circuit determined that members of an administrative board, acting in a quasi-judicial capacity, enjoyed absolute immunity from personal liability.  More specifically,  professional boards have been afforded quasi-judicial immunity when evaluating applicants and their member's qualifications. Velazquez-Feliciano, 78 F. Supp. 2d at 12 (citing Butz, 438 U.S. at 508).

In Bettencourt, the First Circuit expressly recognized that the members of the Massachusetts Board of Registration in Medicine were entitled to absolute immunity for their quasi-judicial functions. Other courts have reached similar conclusions regarding members

---

[9] On April 15, 2003, Jiménez-Rivera was appointed as investigative officer of the Board. Defendants' SUF ¶ 1.

of state medical examiners boards and analogous entities. See also Horwitz v. Bd. of Medical Examiners, 822 F.2d 1508, 1515 (10th Cir. 1987); Watts v. Burkhart, 978 F.2d 269, 271 (6th Cir. 1992); see also O'Neal v. Mississippi Bd. Of Nursing, 113 F.3d 62, 67 (5th Cir. 1997) (granting absolute immunity to members of the state's nursing board acting in their quasi-judicial capacities); Destek Group, 318 F.3d at 40 (holding that members of New Hampshire's Public Utilities Commission acting in an adjudicatory capacity are entitled to absolute immunity); Diva's, 411 F.3d at 42 (finding that City Council was shielded by absolute immunity from damages for their denial of appellant's permit); Guzman-Rivera v. Lucena-Sabala, No. 08-1897, slip. op. at 22 (D.P.R. July 1, 2009) (holding that the state board of accountants was entitled to absolute immunity for their acts as members of the board, to wit, the suspension of appellant's license); Johnson v. Rhode Island Parole Board, 815 F.2d 5, 8 (1st Cir. 1987); cf. Cleavinger v. Saxner, 474 U.S. 193, 206 (1985) (finding that members of a federal prison's Discipline Committee were entitled to qualified, and not absolute, immunity because the procedural safeguards in the Administrative Procedure Act did not apply to the inmates' proceedings). Recently, this Circuit restated Bettencourt's holding, noting that the Massachusetts Board of Registration in Medicine and the Board of Registration of Psychologists are legally indistinguishable, and thus the latter's members were also entitled to quasi-judicial immunity. Coggeshall v. Mass. Bd of Registration of Psychologists et al, No. 09-1111, slip. op. at 9 (1st Cir. May 17, 2010).

In the present case, we must determine if, "while executing the activities which gave rise to this claim," Defendants, as members of the Board, "were acting in an adjudicatory capacity such that [they] are entitled to absolute immunity." Destek Group, Inc. V. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 41 (1st Cir. 2003). In analyzing whether the members of administrative boards were performing quasi-judicial functions sufficiently similar to that of a judge so as to entitle them to absolute immunity, this Circuit has applied a three step functional inquiry which focuses on the particular official's functions, and not to particular

offices. Bettencourt, 904 F.2d at 783; see also Destek Group, 318 F.3d at 40-41; Diva's, 411
F.3d at 41; Velazquez-Feliciano, 78 F. Supp. 2d at 12. Thus even though members of a board
may perform "legislative, executive and judicial functions, each of which may entitle the
official to a different level of immunity, the functional approach to immunity requires that
actions taken in the performance of a particular function are to be accorded the level of
immunity appropriate to that function." Diva's, 411 F.3d at 41 (citing Bettencourt, 904 F.2d
at 782). In "determining whether an official has engaged in a quasi-judicial act," this Court
must first determine if the Board members perform "traditional 'adjudicatory' function[s],
in that [they] decide[] facts, appl[y] law, and otherwise resolve[] disputes on the merits."
Bettencourt, 904 F.2d at 783. Second, it is necessary to determine if the "Board member[s],
like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity,
[they] would be subject to numerous damages actions." Id. Third, this Court must determine
if the "Board member[s], like a judge, adjudicate disputes against a backdrop of multiple
safeguards designed to protect [an individual's] constitutional rights." Id.

　　Defendants aver that they are entitled to absolute immunity because (1) as  members
of the Board, they perform traditional adjudicatory functions; (2) the controversial nature of
the decisions made by them in these proceedings expose them to numerous lawsuits; and (3)
the right to appeal the Board's decisions via judicial review provides a sufficient safeguard
to protect an individual's constitutional rights. González-Droz does not contest that the cases
decided by the Board could subject its members to numerous lawsuits. Moreover, the First
Circuit has recognized that "the act of revoking a physician's license -- which bars the
physician from practicing medicine in the [relevant state]-- is likely to stimulate a litigious
reaction from the disappointed physician, making the need for absolute immunity apparent."
Bettencourt, 904 F.2d at 783 (citing Horwitz, 822 F.2d at 1515). Similarly, there is "a strong
need to insure that individual board members perform their functions for the public good
without harassment or intimidation." Id.  Therefore, the second requisite is met insofar as

absent absolute immunity, Defendants may be subjected to numerous damages actions for their functions as members of the Board.

González-Droz does, however, aver that Defendants' actions were not truly adjudicatory in nature, since they summarily suspended his medical license without an adjudicatory proceeding. He further contends that Defendants relied on a patently unconstitutional statute which allows summary suspension without a pre-deprivation hearing. According to González-Droz, the First Circuit has denied absolute immunity where a state official's actions were based upon a statute that is "so fragrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Docket # 146, p. 13 (citing Guillermard v. Contreras, 490 F.3d 31, 40 (1st Cir. 2007). González-Droz also questions the reasons which allegedly led to the summary suspension, to wit, whether the December 12, 2006 meeting ever took place, and the procedure followed by the Board in reaching its conclusions.

In the present case, as in Bettencourt, 904 F.2d at 783, "the role of a Board member is indeed 'functionally comparable' to that of a judge: he weighs evidence, makes factual and legal determinations, chooses sanctions, writes opinions explaining his decisions, serves a set term, and can be removed only for cause." The nine members of the Board are appointed by the Governor, with the advice and consent of the Senate of Puerto Rico, for five or four years, and continue in office until their term expires and a successor is appointed. P.R. Laws Ann. tit. 20, § 31. Among their duties, members of the Board are empowered to deny, suspend, cancel or revoke any license when a physician "has advertised or practiced as a specialist in one of the branches of medicine without being duly licensed as such by the Board," among other reasons. P.R. Laws Ann. tit. 20, § 52 (d)(4). Moreover, "the Board may summarily suspend a license when one of the reasons for its cancellation or revocation [in § 52(d)] exists, and when the harm that may be caused is of such severity that doing so would

be justified." Id. at § 52(f).[10] In this type of case, "the injured person shall be granted a hearing within fifteen days following the effective date of the summary suspension of the license, with guarantees of due process of law." Id. Thus the first requisite is also met in this case, to wit, in suspending a physician's medical license, Defendants perform traditional adjudicatory functions.

Additionally, Puerto Rico's Uniform Administrative Procedure Act ("LPAU"), P.R. Laws Ann. tit. 3, § 2151 (2008), provides sufficient safeguards to an accused's procedural due process rights, guaranteeing the right to be notified of the charges filed and present evidence, to have impartial adjudication, and a decision based on the record of the case. As in Bettencourt, 904 F.2d at 783, during the administrative proceedings before the Board, physicians may be represented by counsel, may present evidence, and cross-examine witnesses, there is a Board prosecutor, the record is transcribed and available to the parties, the hearing officer renders a written recommendation, and a final written opinion is issued, advising the physician about his right to appeal. See Docket # 148-5, pp. 29-30. These safeguards "enhance the reliability of information and the impartiality of the decisionmaking process. . . ." Bettencourt, 904 F.2d at 783 (citing Butz, 438 U.S. at 512); see also Horwitz, 822 F.2d at 1515 (holding that adequate due process safeguards under state law are enough to protect against unconstitutional conduct without reliance on private damages lawsuits). In this case, the Board members are independent professionals who are required by the LPAU and its regulations to provide substantial due process protection. See Watts v. Burkhart, 978

---

[10] In Resolution 2007-10, the Board cites, and includes copies of the grievances presented by Mrs. Juarkiria Colon and Maria Martinez Marrero on December 4 and 8, 2006 respectively, and points to Eileen Burdette Droz's death due to cosmetic procedures performed by González-Droz. Docket # 129-5. This Court also takes judicial knowledge of malpractice suits filed against González-Droz in this district alleging negligence during the performance of cosmetic procedures. See Haaland-Bergman v. González-Droz, Civil No. 09-1301 (CCC), Martinez v. Gonzaález-Droz, No. 07-1394 (SEC).

F.2d 269, 276 (6th Cir. 1992). As a matter of fact, quasi judicial immunity rests on the fact that Board members are subject to certain restraints, and that any individual before the Board, or similar administrative entities, is protected by certain procedural safeguards, including the right to appeal the Board's decision *via* judicial review.

In regards to the hearings held before the Board, the Board's Act, P.R. Laws Ann. tit. 20, § 52(j), states that individuals affected by the Board's decisions have the right to appeal these decisions by seeking reconsideration, and subsequently judicial review to the Court of Appeals of Puerto Rico. Although the right to seek judicial review would have effectively safeguarded González-Droz's rights from any possible error or wrongdoing by the Board, as his constitutional rights would have been adequately protected, he chose not to move for reconsideration or file an appeal. This omission in itself does not grant González-Droz the right to file suit in federal court, even if grave errors were committed during the administrative proceedings.

Given the Board's quasi-judicial functions, the allegedly deficient manner in which the members of the Board presided over these administrative hearings is irrelevant, insofar as the tasks they performed were in fact adjudicatory in nature, are functionally comparable to those of a judge, and thus entitles them to the absolute immunity that is vested upon judges.[11] This means that "procedural errors, even grave ones, do not divest a judge [or an official acting in a similar capacity] from immunity." Cintrón-Rodríguez v. Pagán-Nieves, 736 F. Supp. 411, 413 (1990).[12] Since the Board and its members are entitled to quasi judicial

---

[11] Generally, judges are immune from suits for monetary damages. Mireles v. Waco, 502 U.S. 9 (1991). This immunity applies with full force to actions brought under 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 554-555 (1967). Judges therefore enjoy "a comparably sweeping form of immunity." Forrester v. White, 484 U.S. 219, 225 (1988). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359 (1978).

[12] As a result, Plaintiffs' SUF ¶¶ 6, 7, 8 (partially), 9, 10, 11, 14, 15, 16, 17, 18, 19, and 20-24 are irrelevant for purposes of the present motion.

immunity, procedural errors, malice and even bad faith in the proceedings before the Board do not defeat their immunity on this front.  See Bettencourt, 904 F.2d at 785. More so, the First Circuit held that board members and their staff are entitled to absolute immunity even in spite of plaintiff's charge of an ongoing "conspiracy" to deprive physicians of their rights. Id.; Wang, 55 F.3d at  702. Therein, the Court also noted that members of the Board and its staff members were entitled to quasi-judicial immunity for establishing a "policy" of sanctioning all physicians regardless of their guilt, because the decision to sanction is "the heart of the adjudicatory process."  Bettencourt, 904 F.2d at 785.

As stated in Butz, 438 U.S. at 514:

> ...the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women. We therefore hold that persons subject to these restraints and performing adjudicatory functions within a federal agency[13] are entitled to absolute immunity from damages liability for their judicial acts. Those who complain of error in such proceedings must seek agency or judicial review.

Lastly, González-Droz alleges that the Board's Act and Regulations allowing summary suspension are patently unconstitutional. However, courts have repeatedly upheld regulations and laws which allow summary suspension upon specific circumstances, such as to ensure public health and safety. See Watts, 978 F.2d 2 at 276. Therefore, González-Droz's arguments on this front also fail. In the present case, a hearing was held within fifteen days following the effective date of the suspension, to wit, May 1 or 2, 2007 when González-Droz and his counsel were personally notified about the Resolution. Docket #, 11-2, p. 7, Plaintiffs' SUF ¶ 9. At that time, González-Droz could have moved for a continuance, as explained in the notice, but instead he chose to file a motion for injunctive relief before this

---

[13]  For purposes of absolute immunity, the Supreme Court has refused to draw a distinction between suit brought against state officials under Section 1983 and suits brought directly under the Constitution against federal officials. Bettencourt, 904 F.2d at 784 (Butz, 438 U.S. at 504).

Court, which was subsequently denied, and affirmed by the First Circuit. Now he argues, to no avail, that he was improperly notified about the hearing. The fact that González-Droz filed his motion for injunctive relief before this Court on May 11, 2007 rebuts his allegations that he first learned about the hearing on May 14, 2007 when he received the summons via mail. Similarly, the latter contradicts his sworn statement declaring that he and his counsel were personally notified on May 1 or 2, 2007. As previously stated, the record shows that González-Droz was absent without excuse, and failed to exercise the available administrative remedies.

In sum, as members of the Board, when determining whether or not to revoke or reinstate medical licenses, the Board must review the facts, weigh the evidence, apply the relevant laws and regulations to those facts, and issue a written order. These types of traditional adjudicatory functions entitle them to absolute immunity in order to avoid exposure to damages suits, and subject them to unnecessary harassment and intimidation in the performance of their duties. Moreover, the members of the Board execute their quasi-judicial functions against a backdrop of procedural safeguards provided by the LPAU, which adequately protect the individual's constitutional rights.

Considering the above, just as in Coggeshall, Bettencourt's ruling controls here. Accordingly, this Court finds that Defendants are entitled to absolute immunity in their individual capacities for their quasi judicial functions. See Schweiker v. Chilicky, 487 U.S. 412 (1988). As such, González-Droz's Section 1983 claims against Defendants for their quasi judicial duties are **DISMISSED with prejudice**.

*Legislative Immunity*

In his motion for summary judgment, González-Droz argue that his summary suspension was based on the Public Notice which regulates the practice of cosmetic surgery in Puerto Rico. According to González-Droz, and as shown in the uncontested facts, physicians were not granted an opportunity to express their positions regarding said notice

prior to its publication. Plaintiffs' SUF ¶ 8. As Defendants point out, González-Droz does not set forth any additional arguments on this front. Therefore, his claims on this front could be dismissed without further discussion. Notwithstanding, this Court notes that the Board's capacity to regulate the medical profession through rules and regulations falls squarely under the scope of legislative immunity.

Under the Supreme Court's test in Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998), "deciding whether an action is a legislative act 'turns on the nature of the act, rather than on the motive or intent of the official performing it.'" Livant v. Clifton, 334 F. Supp. 2d 321, 326-327 (E.D.N.Y. 2004). Similarly, "[i]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Torres-Rivera v. Calderon-Serra, 328 F. Supp. 2d 237, 242 (D.P.R. 2004) (citing Forrester v. White, 484 U.S. 219, 227 (1988)). As a result, "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan, 523 U.S. at 54 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). On this front, this district held that the members of the Puerto Rico Board of Examiners were entitled to absolute legislative immunity for the promulgation of regulations limiting the number of opportunities to pass the Bar Examination. Velázquez-Feliciano, 78 F. Supp. 2d at 13. Moreover, following the Supreme Court's holding in Goldfarb v. Virginia State Bar, 421 U.S. 773, 777 (1975), the Supreme Court of Puerto Rico recognized states' compelling interest in the practice of professions, "and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of the profession." Roman-Vargas v. Board of Medical Examiners of Puerto Rico, 116 P.R. Dec. 71, 16 P.R. Offic. Trans. 92, n. 3 (1986).

In determining whether a defendant's acts are legislative, courts must ascertain if their actions where legislative both "in form," *i.e.*, "integral steps in the legislative process," and in substance, *i.e.*, the acts "bore all the hallmarks of traditional legislation." Bogan, 523 U.S.

at 55. Here, Defendants sued for the promulgation of the Public Notice that regulates the practice of cosmetic surgery in Puerto Rico. In light of the above cited case law, this Court finds that the Board's actions in voting, and approving a resolution which regulates the practice of medicine are clearly legislative in nature, even when performed by members of the Board and not local legislators. On this point, the Supreme Court has "recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." Bogan, 523 U.S. at 55. Additionally, the Public Notice, in substance, "bore all the hallmarks of traditional legislation," insofar as it reflects a discretionary, policymaking decision implicating the practice of medicine and affecting physicians as well as the general public. See Id. at 56. Under this rule of immunity, even "[a]n official's bad motivation, or 'unworthy purpose,' does not affect the immunity privilege so long as the actions fall within the ambit of protected activity." Torres- Rivera v. Calderón-Serra, 328 F. Supp. 2d 237, 241 (2004) (citing Acevedo-Garcia v Vera-Monroig, 204 F.3d 1, 8 (1st Cir. 2000) (citations omitted).

Considering the foregoing, we conclude that the members of the Board who participated in the approval of the Public Notice enjoy absolute legislative immunity, and dismissal of Plaintiff's claims against them is proper on said grounds. Velázquez-Feliciano, 78 F. Supp. 2dat 13-14 (citing McFarland v. Folsom, 854 F. Supp. 862, 875 (M.D. Ala. 1994); see also Supreme Court of VA v. Consumers Union of the United States, 446 U.S. 719, 734 (1980). Moreover, Plaintiffs have no actionable claims against those defendants who were not members of the Board at the time that the Public Notice was issued. Accordingly, González-Droz's monetary claims against Defendants on this front are also **DISMISSED with prejudice**.

*Sherman Act*

In the case at bar, Plaintiffs allege that barring González-Droz from practicing cosmetic medicine in Puerto Rico is an unlawful restraint of trade under Sections 1 and 3 of

the Sherman Act. Docket # 104, p. 21. Section 1 of the Sherman Act, under which Plaintiffs seek relief here, makes unlawful "any contract, combination… or conspiracy, in restraint of trade or commerce among the several states…" 15 U.S.C. § 1. "To be able to state a claim under this section, Plaintiff is obliged to allege the existence of a contract, combination, or conspiracy that is in restraint of interstate trade or commerce which has resulted in injury to Plaintiff." Tropical Air Flying Servs. v. De Melecio, 158 F. Supp. 2d 177, 188-189 (D.P.R. 2001) (citing Tri-State Rubbish, Inc. v. Waste Management, Inc., 803 F. Supp. 451, 455 (D.Me. 1992)).

Notwithstanding, the Supreme Court, "relying on principles of federalism and state sovereignty, held that the Sherman Act did not apply to anticompetitive restraints imposed by the States 'as an act of government.'" City of Columbia v. Omni Outdoor Advertising, Inc., 111 S. Ct. 1344, 1349 (1991) (quoting Parker v. Brown, 317 U.S. 341, 352 1943); see also Sandy River Nursing Care v. Aetna Casualty, 985 F.2d 1138, 1144 (1st Cir. Me. 1993); Tri-State Rubbish v. Waste Management, 803 F. Supp. 451, 455 (D. Me. 1992). Therefore, the Sherman Act does not apply to state action. Id.; see also Parker, 317 U.S. at 352; Neo Gen Screening, Inc. v. New England Newborn Screening Program, 187 F.3d 24, 28 (1st Cir. 1999). Additionally, "state action immunity is also afforded to actions taken by a municipality or to an entity that is 'equivalent to a municipality.'" Tri-State Rubbish, 803 F. Supp. at 455 (citations omitted).

As stated by the Supreme Court in Parker, 317 U.S. at 351, "there is no suggestion of a purpose to restrain state action in the Act's legislative history... that its purpose was to suppress combinations to restrain competition and attempts to monopolize by individuals and corporation, abundantly appears from its legislative history." As a result, the Court held that the Sherman Act "must be taken to be a prohibition of individual and not state action." Id. In Tropical Air, the First Circuit summarized Parker's holding that Congress did not mean to require states to abide by the Sherman Act. Tropical Air, 158 F. Supp. 2d at 188.  The

Court further noted that "a state is free to regulate, or act on its own behalf, in ways that are anti-competitive and would not be permitted to a private individual. This doctrine is so well settled that its rationale and underpinnings are scarcely worth discussing." Id. (citing Neo Gen Screening, 187 F.3d at 28).

Furthermore, as to the personal liability of government employees, this Circuit held "that the possible consequence of imposing personal liability on city or State officials for acts under the federal antitrust laws is 'going too far to 'compromise the States' ability to regulate their domestic commerce.'" Id. (citing Omni, 499 U.S. at 377)(citations omitted). In Fisichelli v. The City Known as the Town of Methuen, 956 F.2d 12, 15-16 (1st Cir. 1992), the Court determined "that even though plaintiffs sued defendants in their private capacities, the basic conduct of which the plaintiffs complain, however, concerns a decision taken by the individual defendants in their roles as town officials." As in Fisichelli, Plaintiffs cannot avoid clear precedent by simply substituting for the name of the Board, the names of the Board members who suspended his medical license.

In this case, Defendants clearly implement state policy regarding the practice of medicine in Puerto Rico. More to the point, the Board's Act expressly grants its members the authority to deny, suspend, cancel or revoke a physician's medical license under specific circumstances. Cf. Goldfarb, 421 U.S. at 790-91 (finding that VA State Bar was not entitled to absolute legislative immunity for issuing fee schedule reports and ethical codes dealing with fees because no Virginia statute refers to fees). Their functions seek to balance physicians' rights and public safety. Since the acts of which Plaintiffs complain were taken for all purposes by an arm of a state department, they amount to "an authorized implementation of state policy." Fisichelli, 956 F.2d at 16 (citing Omni, 111 S. Ct. at 1349). Considering that federal antitrust laws do not apply to state action, Defendants' actions fall outside the reach of the federal antitrust laws. As a result, no monetary damages and/or injunctive relief are available to Plaintiffs against the members of the Board under the federal

antitrust laws. Therefore, Plaintiffs' antitrust claims against Defendants are **DISMISSED with prejudice**.

    *Declaratory Relief*

    Although neither the Eleventh Amendment nor the definition of "persons" under Section 1983 bar a plaintiff's claims for prospective and declaratory injunctive relief, Velazquez-Feliciano, 78 F. Supp. 2d at 14 (citing Ex Parte Young, 209 U.S. 123 (1908); Mills v. Maine, 118 F.3d 37 (1st Cir. 1997); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, n.10 (1988); Idaho v. Coeur d' Alene Tribe of Idaho, 521 U.S. 261 (1997)), as previously stated, legislative immunity does bars injunctive and declaratory relief against officials acting in their legislative capacity when such remedies enjoin the officials' legislative functions. State Employees Bargaining v. Rowland, 494 F.3d 71, 88 (2nd Cir. 2007) (citing Supreme Court v. Consumers Union of the United States, Inc., 446 U.S. 719, 733-34 (1980)) (injunctive relief was barred by legislative immunity where granting the relief sought would compel defendants to perform a legislative act, to wit, repealing or amend the state bar's code to conform with constitutional requirements). Plaintiffs move this Court to determine that the Public Notice is unconstitutional, and to allow González-Droz to resume his practice in cosmetic surgery in Puerto Rico. Said relief would require the members of the Board to revoke their current policies regarding cosmetic surgery in order to implement regulations in accordance with this Court's ruling. Insofar as this would impinge on the members of the Board's legislative capacity, it is clearly barred by the doctrine of legislative immunity. See Rowland, 494 F.3d at 88.

    Moreover, González-Droz improperly filed suit in this district instead of recurring to the proper administrative and state court remedies. That is, he wants this Court to determine the professional requirements of the practice of medicine in Puerto Rico, when such faculty is entrusted by law to the Board as a specialized state agency. This Court is undeniably ill-equipped to deal with these issues, which directly affect the public's welfare and health.

Therefore, we cannot acquiesce to González-Droz's request for declaratory relief on this front.

However, in order to afford Plaintiff equitable relief, this Court orders the Board to hold a *de novo* hearing,[14] affording González-Droz all the procedural safeguards pursuant to the LPAU, and the Board's current regulations. Thereafter, if the Board denies his request, he may move for reconsideration or review before the appropriate forums.

**Conclusion**

For the reasons set forth herein, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendants' motion is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of June, 2010.

> *S/Salvador E. Casellas*
> SALVADOR E. CASELLAS
> U.S. Senior District Judge

---

[14] This Court notes that the hearing shall be held before the current Board.